UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DELISHA MARIE H., <br><br>　　　　　　Plaintiff, <br><br>　v. <br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, <br><br>　　　　　　Defendant. | NO: 2:17-CV-0411-TOR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 10, 15. The Court has reviewed the administrative record and the Parties' completed briefing and is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion and denies Defendant's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).

# FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers

from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of April 24, 2014. Tr. 18, 192. Her application was denied initially and on reconsideration. Tr. 18, 104, 108. Plaintiff filed a written request for a hearing and a hearing before an administrative law judge ("ALJ") was held on November 17, 2016. Tr. 18, 50.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2019. Tr. 20. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 24, 2014, the alleged onset date. Tr. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: "thoracic outlet syndrome (TOS), cervical spine degenerative disc disease, left shoulder tendinitis, and left knee tricompartmental arthrosis with history of anterior cruciate ligament (ACL) reconstruction . . . ." Tr. 20. The ALJ found that Plaintiff had the following non-severe conditions: symptoms secondary to Addison's disease, Raynaud's syndrome, irritable bowel syndrome (IBS), postural orthostatic tachycardia syndrome (POTS), and mental impairments from major depressive disorder and generalized anxiety disorder. Tr. 20, 22. Additionally, the ALJ found the Plaintiff's assertion of limiting symptoms due to fibromyalgia to be medically indeterminable. Tr. 21. At step three, the ALJ found that Plaintiff's severe

impairments did not meet or medically equal a listed impairment. Tr. 23. The ALJ then determined that Plaintiff has the:

> functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can occasionally push/pull, such as operation of foot pedals, with the left lower extremity. Also, she can perform all postural activities frequently except she can occasionally climb ladders / ropes / scaffolds. She can occasionally reach overhead with the left upper extremity. She has sufficient concentration to understand, remember, and carry out complex and detailed tasks, can maintain persistence and pace in 2-hour increments with usual and customary breaks throughout an 8-hour workday.

Tr. 24. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a chemical dependency counselor and a contact representative. Tr. 28. At step five, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff was capable of performing alternative occupations, such as order clerk, printed circuit board assembler, and table worker which exist in significant numbers in the national economy and in Washington State. Tr. 29. Because Plaintiff was capable of past relevant work and other work in the national economy, the ALJ found that Plaintiff was not disabled under the Social Security Act. Tr. 29, 30.

On October 12, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision that is subject to judicial review. Tr. 24; 20 C.F.R. § 404.981.

**ISSUES**

Plaintiff raises three issues for review:

1. Did the ALJ err in evaluating the severity of Plaintiff's impairments at Step Two?

2. Did the ALJ err in assessing Plaintiff's credibility?

3. Did the ALJ err in weighing the medical opinion evidence?

ECF No. 10 at 2.

**DISCUSSION**

Upon review of the ALJ's decision, the Court finds Plaintiff has demonstrated a remand is appropriate.

First, the ALJ erred in finding Plaintiff's fibromyalgia is not medically determinable. The ALJ recognized Plaintiff was diagnosed with fibromyalgia by a treating rheumatologist, but found the condition was not medically determinable because – although Plaintiff was positive for "at least 11 positive tender points", as is required – the ALJ found there was "no indication that other impairments were ruled out", as is also required. *See* Tr. 21. Yet, the ALJ seems to ignore the entirety of the medical record showing no other basis for these symptoms. In any event, the ALJ should have sought additional information from the physician before simply dismissing the diagnoses.

Second, the ALJ erred when it found Plaintiff's postural orthostatic tachycardia syndrome (POTS) to be non-severe. The ALJ concluded:

> Despite testimony of continued syncope or near syncope and medical advice to seek emergent care for such, medical records did not reveal substantiating evidence. Rather, medical records showed but one occasion in which the claimant went to the emergency room for syncope, and otherwise indicated considerable improvement of symptoms with treatment[.]

Tr. 21. In finding the POTS symptoms were non-severe, the ALJ discounted the opinion of Plaintiff's treating physician, Dr. Christopher Kocher, who wrote a letter stating POTS can result in profound activity intolerance and that the course and severity is highly variable. Tr. 843. The ALJ concluded the "evidence . . . strongly suggests" this is not the case, citing records from December 2015 and April 2016 where Plaintiff "reported that she had not had any overt syncopal episodes[.]" Tr. 21.

The ALJ's underlying reasoning for discounting the POTS symptoms and the opinion of Dr. Kocher is not supported by substantial evidence. As an initial matter, POTS symptoms include both dizziness and syncope (the latter of which involves the actual loss of consciousness), so POTS symptoms can be present without syncope episodes. Further, contrary to the ALJ's finding that there is no substantiating evidence of continued syncope or near syncope, the medical records show Plaintiff's POTS symptoms waxed and waned, and continued up to the hearing in November, 2016. *See*, *e.g.*, Tr. 845 (February 25, 2015: "She dealt with

severe POTS last year and was somewhat improved on medications, however, continued with symptoms . . . . The patient had significant improvement as far as her symptomatology and pain. However, the pain that remains still is significant enough that it interferes with her quality of life and activities of daily living . . . . She attempted to go back to work recently part time. She went there for four hours and the day was very difficult for her. It resulted in several days of trying to recover from pain in her left shoulder, neck area, headache and left upper extremity pain."); Tr. 850 (March 16, 2015: Dr. Byrd reporting an "increase in her POTS symptoms" and opining "in terms of her ability to work given the combination of POTS and fibromyalgia, I do not see how she could maintain meaningful employment at this stage."); Tr. 842 (April 8, 2015: Dr. Byrd opining Plaintiff's POTS and fibromyalgia precluded Plaintiff from maintaining "meaningful employment at this stage"); Tr. 854 (July 10, 2015: She has had much less in the way of any symptoms of POTS. She occasionally will get symptoms particularly when she gets overheated or has increasing pain of her thoracic outlet syndrome."); Tr. 861 (August 26, 2015: "Her thoracic outlet syndrome surgery significantly improved her POTS . . . She does get still some tachycardia with POTS exacerbations."); Tr. 1156 (October 22, 2015: "pain levels appear to be stable with medication however POTs [symptoms] are a daily issue."); Tr. 1168 (December 17, 2015: "sit to stand and supine to sit induced POTS symptoms that did resolve

after 30 to 60 seconds."); Tr. 1172 (January 6, 2015: "We tried to spread visits to every other week with significant increase in tone, pain, and POTS"; Goal of "no severe POTS black outs in 12 weeks" not met); Tr. 1188 (April 14, 2016: Plaintiff "reports improved activity tolerance generally but has days of extreme dizziness from POTs."); Tr. 1190 (April 21, 2016: Goal of "no severe POTS black outs in 12 weeks" not met.); Tr. 1270-71 (August 8, 2016: "her fibromyalgia and POTS disease is so severe that I do not see how she can work in any meaningful way. At the same time she does see a little bit of improvement on some of her medications and this may be as good as we are going to get her."); Tr. 1274 (September 21, 2016: "She has not had as many exacerbations of POTS. She is no longer working. Any type of stress triggers POTS. She is doing well with her medications without side effects."); *see also* Tr. 25 (ALJ recounting how Plaintiff testified that "she passed out the other day when watching her children and she bent over to pick up the mail.").

Notably, an ALJ's failure to identify a condition as non-severe is harmless <u>at step two</u> if the ALJ otherwise determines another condition is severe. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (step two merely involves "a threshold determination meant to screen out weak claims . . . It is not meant to identify the impairments that should be taken into account when determining the RFC."). This is because the ultimate disability determination relies on the RFC,

which is based on all limiting symptoms regardless of etiology (and regardless of whether a condition is severe or non-severe). *See* Tr. 24. Here, the ALJ found Plaintiff suffered from other severe conditions, so the error is harmless at step two.

While the errors may be harmless at step two, it appears the underlying error (at least as to the ongoing nature of POTS) was not harmless as to the overall disability determination, which is based on the assigned RFC. Because the ALJ found the POTS symptoms were not ongoing, the ALJ did not take into account the POTS symptoms in forming the RFC. In doing so, the ALJ formed an opinion as to Plaintiff's credibility, the weight to be given to treating physicians, and the ultimate disability determination based on an incomplete view of the symptoms. The Court cannot find such was harmless where (1) Plaintiff's claim heavily relied on alleged POTS symptoms, Tr. 53 (Plaintiff testified that the main reason keeping her from work is "a combination of the postural orthostatic tachycardia syndrome and fibromyalgia"); (2) Plaintiff's treating physician Dr. Byrd opined that Plaintiff's "fibromyalgia and POTS disease is so severe that I do not see how she can work in any meaningful way", Tr. 1270-71; and (3) the ALJ found Plaintiff's testimony not entirely credible and discounted the opinion of Dr. Byrd *because the claimed severity was not consistent with the record*, thus implicating the claimed POTS symptoms. Tr. 25, 27.

The ALJ failed to take the overall trend into account by relying on isolated statements of improvement without fully discussing the records suggesting Plaintiff's symptoms waxed and waned. The ALJ should have at least discussed the return of certain symptoms and discussed the degree of limitations in light of such, but the ALJ did not do so. Thus, the ALJ improperly discounted the treating physicians' opinions without specific and legitimate reasons for doing so.

Moreover, the ALJ discounted Plaintiff's testimony based on her activities of daily living and because she took a single trip, yet did not report any problems. Tr. 26. The ALJ failed to even discuss these activities, let alone demonstrate that Plaintiff spent a substantial portion of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). In part, the ALJ also used this evidence to discount Plaintiff's treating physicians. Because these activities were not identified and shown to involve physical functioning which are transferable to a work setting, that too was error.

On remand, the ALJ should revisit step two to address the deficiencies identified above. The ALJ should also specifically consider all the medical records, including the records discussing the return of symptoms. The ALJ should revisit the assessment of Plaintiff's credibility and properly assess the opinions of Plaintiff's treating physicians. The ALJ must consider the entire record as a whole

and make a decision based upon substantial evidence absent the legal error identified by the Court.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 10) is **GRANTED**. This case is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

2. Defendant's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Plaintiff, provide copies to counsel, and **CLOSE** this file

**DATED** October 15, 2018.



THOMAS O. RICE
Chief United States District Judge